# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| In re:<br><br>JAMES RICHARD ZUBICK and CAROL JANE ZUBICK,<br><br>          Debtors.<br><br>BMO HARRIS BANK, N.A., as successor to M&I MARSHALL AND ILSLEY BANK,<br><br>          Plaintiff,<br><br>v.<br><br>JAMES RICHARD ZUBICK and CAROL JANE ZUBICK,<br><br>          Defendants. | Chapter 7 Proceeding<br><br>Case No. 4:12-bk-23475<br><br><br>Adversary Case No. 4:13-ap-00170<br><br>**MEMORANDUM DECISION** |
|---|---|

## I.    INTRODUCTION

This matter came before the Court pursuant to the *Complaint Seeking Denial of Debtors' Bankruptcy Discharge Pursuant to 11 U.S.C. § 727(a)(2), (3), (4) and (5) and Complaint Seeking Determination of Debt as Non-Dischargeable Pursuant to 11 U.S.C. § 523(a)(2) and (6)* (the "Complaint") filed by BMO Harris Bank, N.A., as successor to M&I Marshall and Ilsley Bank ("BMO Harris Bank") on February 13, 2013 (Adv. Docket No. 1). A trial was conducted on October 3, 2013, at which time the Court took the matter under advisement. For

the reasons set forth in the balance of this memorandum decision, the relief requested in the Complaint is denied.

## II. STATEMENT OF JURISDICTION

This court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(J). This decision constitutes this Court's findings of fact and conclusions of law pursuant to Federal Bankruptcy Rule 7052.

## III. FACTUAL AND PROCEDURAL HISTORY

In 2001, James and Carol Zubick ("Debtors" and/or "the Zubicks") retired to Arizona. Prior to retirement, Mr. Zubick was employed for forty-two years by American Paper Corporation. After moving to Arizona, the Zubicks and one of Mrs. Zubick's sons, who held a contractor's license, formed Terra Cotta, LLC for the purpose of acquiring land and constructing individual homes for resale. The son was responsible for the construction of the homes, and Mr. Zubick acted as a "gofer", doing whatever needed to be done to assist. Mrs. Zubick kept the books. She testified that she had a high school degree and no formal accounting background or training.

BMO Harris Bank made several loans to the Debtors and/or Terra Cotta, LLC for the purpose of financing the construction of the homes. The Debtors were borrowers or guarantors of such loans.

After the downturn in the housing market in 2011, due to defaults under the terms of the loans BMO Harris Bank initiated legal actions against the Debtors and Terra Cotta, LLC, foreclosed on three properties and asserted deficiency claims against the Debtors.

James and Carol Zubick filed a voluntary petition for relief under Chapter 7 on October 26, 2012 (the "Petition Date") which case is pending before this Court. The Debtors' Schedules and Statement of Financial Affairs were also filed on October 26, 2012 (Docket No. 1).

BMO Harris Bank filed Proofs of Claim asserting unsecured claims against Debtors in the approximate amount of $887,619.90 arising from the defaulted real estate loans, in which

the property was foreclosed and deficiency judgments entered or claimed, and credit card obligations (Claim Register Nos. 1, 2, and 3).

On January 7, 2013, the Court, upon application by BMO Harris Bank, entered an Order Concerning Rule 2004 Examination of Debtor James Zubick and for Production of Documents (Docket No. 17). BMO Harris Bank conducted the Rule 2004 examination of Mr. Zubick on February 1, 2013.

Subsequently, on February 27, 2013, the Court, once again upon application by BMO Harris Bank, entered an Order Concerning Rule 2004 Examination of Debtor Carol Zubick and for Production of Documents. BMO Harris Bank conducted the Rule 2004 examination of Mrs. Zubick on March 14, 2013.

During the 2004 Exams the Debtors acknowledged that the following items were not disclosed in their schedules:

1. Mrs. Zubick's income from Brookdyne Enterprises of approximately $3,000 per year;
2. Mrs. Zubick's income from MCM Gems of approximately $600 per year;
3. Mr. Zubick's pension/annuity income of $578.42 per month;
4. Mrs. Zubick's interest in a home located at 5991 North San Joaquin Avenue, Tucson, Arizona; and
5. The existence of a revocable trust in the name of the Zubicks.

The foregoing income items were however included in the Zubicks' filed tax returns and the individual assets held in the trust were disclosed. The tax returns were provided to the Debtors' counsel and to the Chapter 7 Trustee.

On February 13, 2013, BMO Harris Bank filed its Complaint against Debtors, thus commencing this adversary case, designated as Adversary No. 4:13-ap-00170-BMW (the "Adversary"), seeking denial of Debtors' discharge pursuant to 11 U.S.C. §§ 727(a)(2), (3), (4) and (5) and §§ 523(a)(2) and (6), based upon the production of documents and testimony of Mr. Zubick at his 2004 examination, alleging that the Debtors failed to disclose all of their assets, failed to accurately disclose their income, failed to keep or preserve records regarding their

financial condition and business transactions and made false or misleading statements in their Schedules and Statement of Financial Affairs, as well as other actions justifying denial of a discharge.

On October 3, 2013 the Debtors filed amended schedules, to include the omitted income and assets (Docket Nos. 27, 29, 30 and 31).

The Debtors filed an Answer denying the allegations in the Complaint that alleged a discharge was not appropriate. The parties filed a Joint Pretrial Statement which provides that there were no contested issues regarding the BMO Harris Bank loans, including amounts, defaults and the foreclosure of the properties (Docket No. 23).

On October 3, 2013, a trial was conducted at which the Debtors each testified. Plaintiff and Debtors each submitted trial memoranda in support of their positions. Although BMO Harris Bank initially asserted that the Court should deny the Debtors' discharge under 11 U.S.C. §§ 727(a)(2), (3), (4), and (5), or 523(a)(2) or (6), both parties limited their arguments at trial and in their trial memoranda to §§ 727(a)(2) and (4)(A). Accordingly, no evidence was offered at trial and the Court finds no basis to support a denial of Debtors' discharge pursuant to §§ 727(a)(3) or (5), or §§ 523(a)(2) or (6). Therefore, the Court summarily denies BMO Harris Bank's claims under 11 U.S.C. §§ 727(a)(3) and (5) and 523(a)(2) or (6). The remainder of the decision will focus on 11 U.S.C. §§ 727(a)(2) and (4)(A).

**IV.  ISSUES**

1. Did the Debtors conceal property with the intent to hinder, delay, or defraud a creditor?
2. Did the Debtors knowingly or fraudulently make a false oath or account relating to Debtors' property or financial affairs?

///

///

## V. DISCUSSION

### A. Legal Standard

Objections to discharge are construed liberally in favor of a debtor and strictly against those objecting to a discharge. *See First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342–43 (9th Cir. 1986). The party objecting to the debtor's discharge has the burden of proving, by a preponderance of the evidence, that the debtor's discharge should be denied. *See Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010); *Khalil v. Developers Sur. and Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007). Each of BMO Harris Bank's remaining causes of actions will be discussed separately below.

#### 1. 11 U.S.C. § 727(a)(2)

Pursuant to 11 U.S.C. § 727(a)(2), a debtor may not receive a discharge if "the debtor, with intent to hinder, delay or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed— (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate after the date of the filing of the petition." 11 U.S.C. § 727(a)(2). A party seeking a denial of discharge pursuant to § 727(a)(2) must prove, by a preponderance of the evidence, two elements: "(1) a disposition of property, such as a transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property." *In re Retz*, 606 F.3d 1189, 1200 (9th Cir. 2010).

Because a debtor is unlikely to testify that intent was fraudulent, actual intent may be found from circumstantial evidence. *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 754 (9th Cir. 1985). A reckless indifference to the truth has been held to be the equivalent of fraud for the purposes of § 727. *In re Khalil*, 379 B.R. at 177. No injury need be shown by a party objecting to discharge because "lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy." *In re Retz*, 606 F.3d at 1200 (quoting *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir. 1986).

The evidence in this case indicates that this is a case of partial or incorrect disclosure, rather than concealment of property. Specifically, although Debtors failed to disclose Mr. Zubick's monthly pension/annuity payment in Schedules B and I, the Debtors' Statement of Financial Affairs and tax returns include Mr. Zubick's retirement income from the annuity between 2010 and 2012. Similarly, although the Schedules did not include Mrs. Zubick's sporadic income from Brookdyne Enterprises, LLC and MCM Gems in Schedule I, that income does appear in their tax returns. The relevant tax returns were provided by Debtors to their counsel in connection with preparation of the Schedules, but the information was not properly incorporated into Debtors' schedules. The tax returns were also provided to the Chapter 7 Trustee, and the Trustee has not contested the Debtors' discharge.

Additionally, although Debtors' Schedule B did not indicate their interest in the Jim and Carol Family Trust, a revocable trust, the testimony reflects that all of the property held in the trust was included in Debtors' schedules. The testimony also reflects that the IRA that is listed in the Declaration of Trust was fully depleted pre-petition to make payments to BMO Harris Bank. There is no evidence that any assets held in the trust were not disclosed.

With respect to the San Joaquin Property, Mrs. Zubick's deposition testimony indicates that the property was acquired by her ninety-year-old father as a residence for the two of them, given that she lives with him to assist with his care. He paid the down payment and executed carry-back financing with the seller. Mrs. Zubick indicated that the deed was in his name with "a right of survivorship" to her. She indicated that her understanding was that he owned it and that she would acquire ownership sometime in the future. Her testimony was consistent when questioned regarding the warranty deed at trial. She indicated that she did not understand that she was acquiring an ownership interest when she signed the deed, and thought the property would pass to her upon his death. Given Mrs. Zubick's educational background, and a lack of any evidence of formal legal training or business sophistication, the Court finds her testimony credible.

Although the Court does not find these facts sufficient to constitute concealment for the purposes of § 727(a)(2), even assuming they were sufficient the evidence would have to

establish that the Debtors intended to delay, hinder or defraud creditors. Debtors testified that they did not intend to conceal income or assets and that they thought their schedules were accurate when filed. BMO Harris Bank argues that even if Debtors did not intend to conceal their assets, they acted with reckless indifference to the truth and their intent to deceive should be inferred from the totality of the circumstances. The Court disagrees.

At the time the bankruptcy case was filed, Debtors were involved in litigation with BMO Harris Bank, and losing nearly everything they had, including their retirement investments, primary residence, and in addition, were each caring for an elderly parent, and had separated from each other. During this time, the evidence reflects that they provided their counsel with tax returns and other documents to complete their schedules and had every reason to trust that the information would be correctly included. It was not. They reviewed their schedules and believed them to be accurate. Although several errors and omissions existed, every asset and all income was disclosed by Debtors in some manner, with the exception of Mrs. Zubick's interest in the San Joaquin Property.

The testimony reflects that the Debtors were unaware of any inaccuracies until BMO Harris Bank questioned them during the Rule 2004 examinations. There is no evidence to the contrary. There is no question that Debtors' counsel should have promptly amended the schedules after the omissions came to his attention in February and March, and counsel provided no good explanation as to why this was not done, other than that his office dropped the ball. Although extremely delayed, the schedules were ultimately amended to reflect the previously omitted assets and income. Considering all of these facts, and the totality of the evidence, the Court finds that Debtors' conduct does not support a finding of reckless indifference to the truth and that the essential element of intent to hinder, delay or defraud has not been established in this case. Accordingly, denial of Debtors' discharge pursuant to § 727(a)(2) is not warranted and is denied.

/ / /

/ / /

## 2. **11 U.S.C. § 727(a)(4)**

Section 727(a)(4) of the Bankruptcy Code provides that a debtor may not receive a discharge if "the debtor knowingly and fraudulently, in or in connection with the case— (A) made a false oath or account . . . ." 11 U.S.C. § 727(a)(4)(A). A false statement or an omission in the debtor's schedules can constitute a false oath. *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010). The purpose of § 727(a)(4)(A) is to ensure that debtors provide accurate information to the trustee and creditors without requiring them to conduct costly investigations. *Fogal Legware of Switz., Inc. v. Wills* (*In re Wills*), 243 B.R. 58, 63 (9th Cir. B.A.P. 1999).

To prevail under § 727(a)(4)(A), the party objecting to discharge must show, by a preponderance of the evidence, that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *In re Retz*, 606 F.3d at 1197 (quoting *Roberts v. Ernhard* (*In re Roberts*), 331 B.R. 876, 882 (9th Cir. B.A.P. 2005). The requisite intent under the "knowingly and fraudulently" elements may be found where "there has been a pattern of falsity or from a debtor's reckless indifference to or disregard of the truth." *In re Khalil*, 379 B.R. at 174 (quoting *In re Wills*, 243 B.R. at 64). Although reckless indifference is not sufficient in and of itself to constitute fraudulent intent, it may be circumstantial evidence of intent. *In re Retz*, 606 F.3d at 1189.

### a. **False Oath**

A false oath may involve a false statement or omission in the debtor's schedules. *In re Wills*, 243 B.R. at 62. There is no dispute that Debtors' schedules were incomplete with regards to assets and income. Debtors did not disclose a pension/annuity that Mr. Zubick has received monthly since 2001, Mrs. Zubick's sporadic income from Brookdyne Enterprises, LLC and MCM Gems, their interest in a family revocable trust, and Mrs. Zubick's interest in the San Joaquin Property. For purposes of this discussion, the Court will assume, but not decide, that these omissions are sufficient to find that Debtors made a false oath when they signed and submitted their schedules.

### b. **Materiality**

Materiality is defined broadly and false statements or omissions may be material even if they do not cause direct financial prejudice to creditors. *In re Khalil*, 379 B.R. at 174 (quoting *In re Wills*, 243 B.R. at 63). "A false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *In re Wills*, 243 B.R. at 62. Debtors' failure in this case to properly account for various assets and sources of income did not cause any direct financial prejudice to BMO Harris Bank. Any one of the omissions, taken alone, would fall short of meeting the materiality requirement. When taken together, however, given the number of omissions, for purposes of this discussion the Court will assume, but not decide, that the inaccuracies in Debtors' schedules are material for purposes of § 727(a)(4)(A).

### c. **Knowingly**

Debtors act knowingly when they act deliberately and consciously. *In re Khalil*, 379 B.R. at 173. In this case, there is no evidence that Debtor made a deliberate or conscious choice to omit income or assets from their schedules. Instead, they submitted to their counsel tax returns which included all sources of their income. Similarly, they disclosed all of the assets held in their trust, but mistakenly did not indicate their interest in the trust. Finally, Mrs. Zubick did not disclose her interest in the San Joaquin Property due to her failure to understand that she acquired a present property interest. Debtors both testified that they believed the schedules were complete and accurate when they signed them. These circumstances do not support a finding that Debtors <u>knowingly</u> made a false oath.

### d. **Fraudulently**

To show that a debtor acted fraudulently, a creditor must show the elements of common law fraud: (1) the debtor made the representations; (2) at the time they were made the debtor knew they were false; and (3) the representations were made with the intention of deceiving creditors. *In re Retz*, 606 F.3d at 1198–99. Debtors' actions in this case fall short of fraud. As discussed above, Debtors did not know the information in their schedules was incomplete or inaccurate at the time they signed them. Further, there is no evidence that supports the

contention that the omissions were made with the intention of deceiving creditors. Accordingly, BMO Harris Bank has failed to meet its burden with respect to fraudulent intent.

  **e.**  **Reckless Indifference**

  BMO Harris Bank argues that even if Debtors did not knowingly and fraudulently make a false oath, their behavior constitutes a reckless indifference to the truth that satisfies the requirement of intent to deceive required for a finding of fraud. As discussed in the context of 11 U.S.C. § 727(a)(2), the Debtors were unaware of the inaccuracies in their schedules until their Rule 2004 examinations. When they were questioned about the omissions, Debtors were forthright in discussing their assets and income, and acknowledged that mistakes were made. While there is no explanation as to why Debtors and Debtors' counsel waited until the day of the trial to amend the schedules, the facts of this case and the totality of the circumstances do not rise to the level of reckless indifference. *See, e.g*, *In re Khalil*, 379 B.R. at 173–78. Having concluded that Debtors did not knowingly or fraudulently make a false oath and their behavior did not constitute a reckless indifference to the truth, the Court denies BMO Harris Bank's request to deny Debtors' discharge pursuant to § 727(a)(4)(A).

**VI.** **CONCLUSION**

  Debtors initially failed to disclose various assets and sources of income in their schedules. These omissions, however, were not the product of Debtors' intent to delay, hinder or defraud their creditors. Additionally, Debtors did not knowingly and fraudulently make false oaths by signing and filing their schedules, which contained omissions and inaccuracies. Accordingly, the relief requested by BMO Harris Bank in its Complaint, to deny Debtors' discharge pursuant to 11 U.S.C. §§ 727(a)(2), (3), (4) and (5) and 523(a)(2) and (6) is denied. A separate judgment will be entered.

  DATED AND SIGNED ABOVE.

/ / /

/ / /

Case 4:13-ap-00170-BMW Doc 31 Filed 06/27/14 Entered 06/27/14 15:20:45 Desc
Main Document Page 10 of 11

10

To be NOTICED by the BNC ("Bankruptcy Noticing Center") to:

James Richard Zubick
7823 W Palladin Rd
Tucson, AZ 85743

Carol Jane Zubick
6125 W Sunset Rd
Tucson, AZ 85743

Dennis M. Breen, III
Breen Olson & Trenton, LP
4720 N Oracle Rd, Ste 100
Tucson, AZ 85705-1673
*Attorney for Debtors*

Eugene F. O'Connor, II
Folks & O'Connor, PLLC
1850 N Central Ave, Ste 1140
Phoenix, AZ 85004
*Attorney for BMO Harris Bank, N.A.*

Stanley J. Kartchner
Chapter 7 Trustee
7090 N Oracle Rd #178-204
Tucson, AZ 85704

Office of the U.S. Trustee
230 N First Ave, Ste 204
Phoenix, AZ 85003